RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0457p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

   *v.*

ROGER CLAYTON WHITE,
      *Defendant-Appellant.*

No. 05-6596

Appeal from the United States District Court

for the Eastern District of Kentucky at Covington.

No. 02-00027—David L. Bunning, District Judge.

Argued: June 4, 2008

Decided and Filed: December 24, 2008

Before: BOGGS, Chief Judge; MERRITT, MARTIN, BATCHELDER, DAUGHTREY,

MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, COOK,

McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Nina Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Douglas A. Berman, THE OHIO STATE UNIVERSITY, MORITZ COLLEGE OF LAW, Columbus, Ohio, for Amicus Curiae. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Charles P. Wisdom, Jr., Andrew Sparks, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, Nina Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Douglas A. Berman, THE OHIO STATE UNIVERSITY, MORITZ COLLEGE OF LAW, Columbus, Ohio, Mark D. Harris, Jeffery A. Gross, Anna G. Kaminska, PROSKAUER ROSE LLP, New York, New York, for Amicus Curiae.

1

COOK, J., delivered the opinion of the court, in which BOGGS, C. J., BATCHELDER, GILMAN, GIBBONS, ROGERS, SUTTON, McKEAGUE, and GRIFFIN, JJ., joined. MERRITT, J. (pp. 10-25), delivered a separate dissenting opinion, in which MARTIN, DAUGHTREY, MOORE, COLE, and CLAY, JJ., joined.

_____

**OPINION**

_____

COOK, Circuit Judge. This is a sentencing appeal. When a jury convicted Roger Clayton White of two counts, but acquitted him of others, the district court looked to conduct underlying the acquitted counts to enhance White's offense level under the Sentencing Guidelines. White questions whether this practice withstands Sixth Amendment scrutiny, and we hold that it does so long as the resulting sentence does not exceed the jury-authorized United States Code maximums.

I

White waited in a car armed with a 9mm rifle while his brother, Jeffrey, and Jeffrey's girlfriend, Laurie Fischer, robbed a bank of more than $100,000, holding two bank tellers at gunpoint and firing a shot near one teller's head. White drove the getaway car and led police on a lengthy high-speed chase that included shots fired from the car at pursuing officers. The chase ended only when White crashed into a roadblock. *United States v. White*, 134 F. App'x 880, 882 (6th Cir. 2005). A jury found White guilty of just two of six charges: armed robbery, which carried a maximum sentence of twenty-five years, 18 U.S.C. § 2113(d), and possessing a firearm with the serial number removed, with a five-year maximum, *id.* § 922(k).

Applying the Guidelines' relevant-conduct principles in sentencing White, *see* U.S.S.G. § 1B1.3 (2002 ed.), the court determined that uncontested evidence of shots being fired in the bank and at pursuing officers warranted certain offense-level enhancements: seven levels for discharging a firearm during the robbery, *id.* § 2B3.1(b)(2), and three levels for assaulting a law enforcement officer during flight, *id.* § 3A1.2(b)(1). The court justified using acquitted conduct to enhance White's sentence by saying, "[W]hile [White] was

acquitted of the conduct relating to the discharge of the firearm in the vault and then during the chase . . . he aided and abetted that conduct, and it was reasonably foreseeable to him that . . . in furtherance of the jointly undertaken criminal activity that guns would be not only brandished but discharged."

When addressing the 18 U.S.C. § 3553(a) factors, the court also noted how the use of firearms in the bank and during flight "placed in jeopardy the lives of several innocent persons." Far from "a garden variety bank robbery," the court viewed White's offense as "probably one of the most egregious bank robberies" it had ever seen, concluding that "the lives of the folks that were inside that bank have been forever changed by [White's] and others' conduct . . . [and] anything less than [a 264-month sentence] would not promote respect for the law, [and would] minimize the trauma and pain and suffering by the victims."

White appealed, contending that the district court improperly considered acquitted conduct. The panel reviewing his appeal, with some expressed misgivings, adhered to earlier precedent on the issue, *see United States v. Mendez*, 498 F.3d 423 (6th Cir. 2007) (per curiam), while urging en banc consideration. Recognizing that the acquitted-conduct issue presents a "question of exceptional importance," Fed. R. App. P. 35(a)(2), the full court agreed to reconsider the *Mendez* holding.[1] *United States v. White*, 503 F.3d 487 (6th Cir. 2007), *reh'g en banc granted*, *op. withdrawn*, 2007 WL 2890974 (6th Cir. Nov. 30, 2007).

II

First, *Mendez*. A grand jury charged Victor Mendez with conspiracy to distribute 500 grams or more of a substance containing methamphetamine. 498 F.3d at 425. The jury foreman checked "yes" on the verdict form to indicate that the government proved beyond a reasonable doubt at least 50 grams, but checked "no" to indicate that the government failed to prove the offense involved at least 500 grams. *Id.* The Presentence Report ("PSR") nevertheless relied on trial testimony to attribute 2.95 kilograms to

---

[1]We focus our discussion on the single question the panel urged the court to review en banc: whether the district court violated White's Sixth Amendment right to trial by jury by relying on acquitted conduct for sentencing. The panel did not believe the other issues raised by White justified reversal of the judgment below and we agree.

Mendez, prompting his objection to a sentence grounded on a drug quantity not found beyond a reasonable doubt by the jury. *Id.* Concluding that the PSR accurately reflected facts proved by a preponderance of the evidence, the district court overruled the objection and sentenced Mendez to the low end of the applicable Guidelines range. *See id.* at 425 & n.1. On appeal, a panel of this court rejected the defendant's Sixth Amendment right-to-trial-by-jury challenge, sanctioning the district court's use of acquitted conduct in calculating an advisory Guidelines range. *Id.* at 426–27 & n.2. The *Mendez* panel reached this holding by relying on *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), which the Supreme Court decided after Congress passed the Sentencing Reform Act ("SRA").

Though *Watts* examined this issue from a double-jeopardy perspective, *Watts* regarded acquitted conduct as providing the sentencing court with "[h]ighly relevant—if not essential . . . information." 519 U.S. at 151–52 (internal quotation marks omitted). Relying on the different standards of proof that govern at trial versus sentencing, the Court concluded "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* at 157.

*Watts* preceded *United States v. Booker*, 543 U.S. 220 (2005), but the *Booker* majority, which held that the mandatory guideline system was unconstitutional, viewed the two decisions as not inconsistent. *Id.* at 240–41. This circuit likewise recognizes *Watts*'s continued vitality post-*Booker*, repeatedly holding "that sentencing courts may still find facts using the preponderance-of-the-evidence standard." *Mendez*, 498 F.3d at 426–27 (citing, e.g., *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006)); *see also United States v. Brika*, 487 F.3d 450, 458–60 (6th Cir.) (holding that *Booker* did not disturb *Watts* and that a post-*Booker* court may consider even acquitted conduct if it finds facts supporting that conduct by a preponderance of the evidence), *cert. denied*, 128 S. Ct. 341 (2007).

*Mendez* accords with the view expressed by each of our sister circuits that *Booker* did not alter the *Watts* position on acquitted conduct: "*Watts* remains good law."

*United States v. Magallanez*, 408 F.3d 672, 684 n.1 (10th Cir. 2005); *see, e.g.*, *United States v. Faust*, 456 F.3d 1342, 1348 (11th Cir. 2006) (same); *United States v. Hayward*, 177 F. App'x 214, 215 (3d Cir. 2006) (same); *United States v. Ashworth*, 139 F. App'x 525, 527 (4th Cir. 2005) (same).  The "core principle of *Watts* lives on and [a] district court [may] constitutionally consider . . . acquitted conduct." *United States v. Mercado*, 474 F.3d 654, 657 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 1736 (2008); *see also United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) (same); *United States v. Horne*, 474 F.3d 1004, 1006–07 (7th Cir.) (same), *cert. denied*, 127 S. Ct. 2957 (2007); *United States v. Farias*, 469 F.3d 393, 399 (5th Cir. 2006) (same); *United States v. Gobbi*, 471 F.3d 302, 313–14 (1st Cir. 2006) ("Post-*Booker*, the law has not changed . . .; acquitted conduct, if proved by a preponderance of the evidence, still may form the basis for a sentencing enhancement."); *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005) ("[D]istrict courts may find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct . . . .").

The dissent sees things differently.  It concedes that *Watts* survived *Booker* and that *Watts* rejected (and continues to reject) a Fifth Amendment double-jeopardy challenge to the use of acquitted conduct at sentencing.  But it insists that *Watts* is irrelevant here because White premises his argument not on the Fifth Amendment, but on the Sixth Amendment.  In one sense, the dissent is correct.  As *Booker* itself recognized, *Watts*'s rejection of a double-jeopardy challenge to the use of acquitted conduct at sentencing did not close the door on subsequent Sixth Amendment challenges to sentences based on judge-found facts.  *Booker*, 543 U.S. at 240–41 & n.4.  Thus, although a court may properly look to facts underlying acquitted conduct in sentencing, the Sixth Amendment remains a backstop.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also Blakely v. Washington*, 542 U.S. 296, 303–04 (2004) (same).

The dissent also is correct in another sense.  Had the district court in this case relied on acquitted conduct *in determining the range under a mandatory guidelines*

*regime*, that sentence would have violated the Sixth Amendment as interpreted in *Booker*. For the same reason that *Booker* precluded district courts from finding sentencing facts that ratcheted up mandatory Guidelines ranges, it would have prevented district courts from doing the same thing with respect to findings related to acquitted conduct.

But these observations do not show that the Sixth Amendment prevents a district court from relying on acquitted conduct in applying an *advisory* guidelines system. In the post-*Booker* world, the relevant statutory ceiling is no longer the Guidelines range but the maximum penalty authorized by the United States Code. *See United States v. Sexton*, 512 F.3d 326, 330 (6th Cir.) ("Since defendants were sentenced under an advisory Guidelines scheme, the maximum statutory penalty that the district court could impose was determined by the statute of conviction, rather than by a Guidelines range calculated using only jury findings."), *cert. denied*, — S. Ct. —, 2008 WL 3484875 (2008). This point too enjoys unanimity among the courts of appeals. *See, e.g.*, *Settles*, 530 F.3d at 923 ("For Sixth Amendment purposes, the relevant upper sentencing limit established by the jury's finding of guilt is thus the *statutory* maximum, not the advisory Guidelines maximum . . . ."); *United States v. Grier*, 475 F.3d 556, 566 (3d Cir. 2006) (en banc) (same), *cert. denied*, 128 S.Ct. 106 (2007); *United States v. Jiminez*, 498 F.3d 82, 87 (1st Cir. 2007) (same); *United States v. Green*, 162 F. App'x 283, 284 (5th Cir. 2006) (per curiam) (same); *United States v. Crosby*, 397 F.3d 103, 109 n.6 (2d Cir. 2005) (same), *abrogated on other grounds as recognized in United States v. Lake*, 419 F.3d 111, 113 n.2 (2d Cir. 2005); *United States v. Duncan*, 400 F.3d 1297, 1303 (11th Cir. 2005) (same); *United States v. Smith*, 413 F.3d 778, 781 (8th Cir. 2005) (same). So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range.

Neither White nor the dissent offers any explanation why sentences based on acquitted conduct differ for Sixth Amendment purposes from any other sentence driven

by judge-found facts but falling within the statutorily defined sentencing range. And they offer no explanation why that claim makes sense post-*Booker*. By freeing a district court to impose a non-guidelines sentence, *Booker* pulled out the thread that holds White's Sixth Amendment claim together.

The dissent also errs in saying that defendant is being sentenced to additional years "for three crimes the jury in its verdict said he did not commit." The jury verdict says no such thing. It says something very different—that the conduct had not been proved beyond a reasonable doubt. Lawyers have long recognized the distinction between proof beyond a reasonable doubt—the standard for criminal conviction—and proof by a preponderance of the evidence—the standard for civil trials. Laypersons have become familiar with the distinction from the pair of O.J. Simpson trials, in which one jury found the crime not proved beyond a reasonable doubt, but another jury found civil liability by a preponderance of the evidence.

White thus is not being "sentenced for acquitted conduct" when White's sentencing judge takes that conduct into account in determining a sentence for the crime of which the White *was* convicted, as long as the sentence imposed falls within the range prescribed by law for that *convicted* conduct. Taking acquitted conduct into account unquestionably was permitted before the Guidelines were instituted, when a judge could sentence anywhere up to the maximum for convicted conduct, for any number of unstated reasons, including presumably a mere suspicion that the defendant also committed what the jury was not convinced of beyond a reasonable doubt. Taking acquitted conduct into account was not barred during the regime of mandatory Guidelines. *See Watts*, 519 U.S. at 151–52. Now that the Guidelines are advisory—a regime that floats between the previous two regimes—it seems particularly unusual to say that taking acquitted conduct into account all of a sudden is not permitted. It is permitted for the limited purpose of determining the sentence for convicted conduct, which must be shown by a preponderance of the evidence.

Nor does the dissent's reliance on the *Canania* decision advance its position. When a layperson such as Juror #6 in the *Canania* case expresses frustration that the

court system does not seem to respect the juror's contribution, the best response is not to confirm the misunderstanding; it is to explain that indeed the juror's contribution is being faithfully acted upon, that under our system judges have the power within a statutory range to determine the punishment for the crime that the juror did find beyond a reasonable doubt, and that the judge may take into account facts about the defendant that the judge determines to be more probable than not, even though the jurors could not find those facts beyond a reasonable doubt. That difference is a cornerstone of criminal procedure, and it is the distinction that has been embedded in our common law legal tradition for hundreds of years.

We granted en banc review to decide whether the district court's consideration of acquitted conduct in sentencing passes constitutional muster. Our sister circuits agree that it does, insofar as enhancements based on acquitted conduct do not increase a sentence beyond the maximum penalty provided by the United States Code. We follow suit, and in doing so affirm *Mendez* as the law of this circuit.

III

District of Columbia Circuit Judge Kavanaugh in the *Settles* case acknowledged that defendants understandably perceive unfairness when sentencing courts rely on acquitted conduct. 530 F.3d at 923–24. The *Settles* court observed that "Congress or the Sentencing Commission certainly could conclude as a policy matter that sentencing courts may not rely on acquitted conduct. But under binding precedent, the Constitution does not prohibit a sentencing court from relying on acquitted conduct." *Id*. at 924.

To say that district court judges may enhance a defendant's sentence based on acquitted conduct, however, is not to say that they *must* do so. First, and most obviously, a factual presentation that fails to persuade a jury beyond a reasonable doubt may well fail to persuade a judge by a preponderance of the evidence. Second, one of the central points of *Booker*, highlighted by *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), is that a district court judge may disagree with the application of the Guidelines to a particular defendant because the Guidelines range is too high or too low to accomplish the purposes set forth in § 3553(a). If the district court judge concludes

that the sentence produced in part by these "relevant conduct" enhancements "fails properly to reflect § 3553(a) considerations," *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007), the judge may impose a lower sentence, including, if reasonable, a lower sentence that effectively negates the acquitted-conduct enhancement. Third, a district court that enhances a sentence based on acquitted conduct, in fulfilling its duty to "adequately explain the chosen sentence to . . . promote the perception of fair sentencing," *Gall v. United States*, 128 S. Ct. 586, 597 (2007), should articulate how and why, in its judgment, such conduct appropriately influenced its § 3553(a) analysis with respect to the specific defendant and specific crime at issue.

IV

We determine that the district court properly exercised its authority in sentencing White and thus affirm his conviction.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.  The majority of my colleagues now send the defendant, Roger White, to prison for 14 additional years for three crimes the jury in its verdict said he did not commit.  The enhancement of 14 years more than doubled the sentence to 22 years.  There are at least two related but independently sufficient reasons to reverse White's sentence.  First, the reasonableness — and thus legality — of White's sentence depends entirely on the presence of facts that were found by a judge, not a jury, in contravention of the Sixth Amendment.  Second, and more broadly, the use of acquitted conduct to punish is wrong as a matter of statutory and constitutional interpretation and violates both our common law heritage and common sense.

My colleagues do not discuss any of these issues in their opinion, which instead relies upon but fails to understand and completely misapplies the Supreme Court's opinion in *United States v. Watts*, 519 U.S. 148 (1997).  The majority also misunderstands the Supreme Court's *Apprendi-Blakely-Booker* line of cases, erroneously asserting that judicial factfinding poses no Sixth Amendment problems whatsoever so long as the sentence is within the statutory range authorized by the jury verdict.

After briefly explaining the sentencing facts of this case (facts glossed over in the majority opinion), I will set out the reasoning the majority should have followed.  Because the sentence cannot be upheld as reasonable without accepting as true certain judge-found facts, the sentence represents an as-applied violation of White's Sixth Amendment rights and should be reversed.  White's sentence, of course, is just one example of the widespread problem of using judge-found facts to calculate the applicable sentencing range under the Guidelines.  In my view, the solution to this problem lies in the distinction between *offense conduct*, which must be found by the jury or admitted by the defendant, and *offender characteristics*, which may be found by the sentencing judge.  Next, I turn to the broader question of acquitted conduct.  Because there is no binding precedent on the issue of acquitted conduct and the right to trial by

jury, we should address this open question by reference to the history and substantive protections of the jury-trial right. In so doing, I conclude that punishment for acquitted conduct poses unique constitutional problems and must be avoided.

## I. Sentencing Facts

White was the driver of the getaway car in a Kentucky bank robbery. Two other people entered the bank and absconded with $101,000 after one of them threateningly discharged a firearm inside the bank without injuring anyone. White did not enter the bank or use a weapon. One of the robbers thereafter discharged a firearm from the car driven by White during the course of an extended high-speed police chase. White was charged with one count of conspiracy to commit armed bank robbery; one count of armed bank robbery; one count of conspiracy to use and carry a firearm in relation to a bank robbery; two counts of aiding and abetting the use and discharge of a firearm; and one count of possession of a firearm with an obliterated serial number. He was convicted only of aiding and abetting armed bank robbery and possession of a firearm with an obliterated serial number. He was acquitted on the other four counts.

Although rejecting White's defense of duress, the jury acquitted him of Count 1, charging him with conspiracy to rob the bank. More importantly for purposes of this case, the jury acquitted him of Counts 3, 4, and 5, charging respectively a conspiracy to use and carry a firearm and two substantive counts of aiding and abetting the "using, carrying, brandishing and discharging" of a firearm in the robbery. In other words, White was convicted of bank robbery but acquitted of all counts charging him with the use of weapons in connection with the robbery. Despite the acquittal of the use-of-weapons charges, the sentencing judge increased the sentence as though the jury had found White guilty of these weapons charges.

The parties agree that White's base offense level was 20 with no prior criminal record, an offense level carrying a recommended sentencing range of 33 to 41 months in prison. The jury found that a financial institution was robbed, triggering a two-level increase, and that more than $50,000 but less than $250,000 was taken, triggering another two-level increase, bringing the offense level to 24 (carrying a recommended

sentence range of 51 to 63 months).  These findings were a part of the jury verdict, and White does not challenge them or the resulting calculations.

In addition, based on the jury verdict rejecting White's testimony that he was forced to participate in the robbery, the sentencing judge increased the offense level by two levels for perjury, from level 24 to level 26.  The judge also found that the extended police chase during which White drove the car through a road block and then crashed the car into another police road block endangered lives and deserved an additional two-level increase, bringing the offense level up to 28, which carries a recommended sentencing range of 78 to 97 months.  The two-level enhancement for perjury is implicit in the jury's verdict rejecting White's testimony that he was forced or coerced into participating in the bank robbery as a getaway driver.  The jury could not have reached its verdict if it had believed White's testimony.  Thus, the perjury adjustment is based on a jury finding.  During his testimony, White expressly admitted that he drove the car in a high-speed police chase (as the previous panel of our court found) "ending when White crashed his car into a road block, and the car burst into flames."

White's challenge to his sentence stems from the additional ten-level increase found by the sentencing judge:  a seven-level increase imposed by the sentencing judge for aiding in another robber's discharge of a weapon inside the bank — a specific charge in the conspiracy and substantive counts that the jury acquitted him of — and a three-level increase for aiding another robber in firing "at least two gunshots at a pursuing police car" — another specific charge for which White was acquitted.  The resulting offense level of 38 carried a recommended sentencing range of 235 to 293 months, and the judge sentenced White to 264 months, or 22 years.  The two judicial upward adjustments for acquitted charges account for approximately 14 years of the 22-year sentence.

## II.  The Sixth Amendment and Judicial Factfinding

### A.  As-Applied Violations

Over the past decade, the Supreme Court has begun the process of bringing sentencing guidelines, state and federal, into line with the Sixth Amendment and Article III, § 2 and our common law heritage.  In *Apprendi v. New Jersey*, the Supreme Court established that, under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).  In *Blakely v. Washington*, the Court went further, clarifying that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. 296, 303 (2004).  That is, "the maximum [a judge] may impose *without* any additional findings." *Id*. at 304 (emphasis in original).  More recent cases have reiterated the same point.  In *Cunningham v. California*, for example, the Supreme Court said:  "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied."  127 S. Ct. 856, 869 (2007).

In *United States v. Booker*, the Court applied the *Apprendi-Blakely* framework to the United States Sentencing Guidelines and determined that the section of the Sentencing Reform Act that made the Guidelines mandatory violated the Sixth Amendment and needed to be excised.  543 U.S. 220, 258-65 (2005).  The Court said in *Booker*:  "More important than the language used in our holding in *Apprendi* are the principles we sought to vindicate. . . .  They are not the product of recent innovations in our jurisprudence, but rather have their genesis in the ideals our constitutional tradition assimilated from the common law." *Id*. at 238.  This language echoed the reasoning of *Blakely*:

> Our commitment to *Apprendi* in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right to jury trial.  That right is no mere procedural formality, but a

fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.

524 U.S. at 305-06.

Whether the Court's solution in *Booker* actually resolved the Sixth Amendment problem posed by the Sentencing Guidelines is debatable.[1] But it is clear that the post-*Booker* development of reasonableness review has opened the door for Sixth Amendment challenges to sentences within the statutory range authorized by the jury's verdict. In their concurring opinion in *Rita v. United States*, Justices Scalia and Thomas explained how substantive-reasonableness review would inevitably produce sentences whose legitimacy turns on the existence of certain facts, which, under the Sixth Amendment, must be found by a jury or admitted by the defendant. 127 S. Ct. 2456, 2477 (2007) (Scalia, J., concurring in part and concurring in the judgment). They illustrate the point with the following hypothetical:

> [T]he base offense level for robbery under the Guidelines is 20, which, if the defendant has a criminal history of I, corresponds to an advisory range of 33-41 months. If, however, a judge finds that a firearm was discharged, that a victim incurred serious bodily injury, and that more than $5 million was stolen, then the base level jumps by 18, producing an advisory range of 235-293 months. When a judge finds all of those facts to be true and then imposes a within-Guidelines sentence of 293 months, those judge-found facts, or some combination of them, are not merely facts that the judge finds relevant in exercising his discretion; they are the legally essential predicate for his imposition of the 293-month sentence. His failure to find them would render the 293-month sentence unlawful. That is evident because, were the district judge explicitly to find none of those facts true and nevertheless to impose a 293-month sentence (simply because he thinks robbery merits seven times the sentence that the Guidelines provide) the sentence would surely be reversed as unreasonably excessive.

---

[1] *See, e.g.*, Michael W. McConnell, *The Booker Mess*, 83 DEN. U. L. REV. 665, 677 (2006) ("The most striking feature of the *Booker* decision is that the remedy bears no logical relation to the constitutional violation."); Douglas A. Berman, *Conceptualizing* Booker, 38 ARIZ. ST. L.J. 387, 387 (2006) ("Read independently, each majority opinion in *Booker* seems conceptually muddled; read together, the two *Booker* rulings seem almost conceptually nonsensical.").

*Id.* Thus, "for every given crime there is some maximum sentence that will be upheld as reasonable based only on the facts found by the jury or admitted by the defendant," from which it follows that "[e]very sentence higher than that is legally authorized only by some judge-found fact," a sentencing process that is unlawful because all facts needed to authorize a sentence "must be found by the jury beyond a reasonable doubt in order 'to give intelligible content to the right of jury trial.'" *Id.* (quoting in part *Blakely*, 542 U.S. at 305).

The majority in *Rita* avoided this point as a mere hypothetical that did not need to be addressed at the time. *See id.* at 2466 (majority opinion). But the case at hand raises this very issue, and we must address it now. White's sentence is arguably even more problematic than the sentence in the hypothetical because the jury actually acquitted White of the conduct that led to more than half of his sentence, but the Sixth Amendment violation is identical. White's 22-year sentence is made possible only by reference to judge-found facts about the discharge of firearms during the crime. Absent those facts, the recommended Guidelines range would be 78 to 97 months. Against that backdrop, a 264-month sentence would certainly be reversed as unreasonable. As such, those judge-found facts are necessary for the lawful imposition of the sentence, thus violating the Sixth Amendment right to a jury trial: "[E]xcessive sentences within the statutory range, and the ability of appellate courts to reverse such sentences, inexorably produces, in violation of the Sixth Amendment, sentences whose legality is premised on a judge's finding some fact (or combination of facts) by a preponderance of the evidence," *id.* at 2476. Therefore, White's sentence must be reversed.

**B. Offense/Offender Distinction**

To ensure that such unconstitutional sentences are not imposed in the future, district courts should calculate the applicable Guidelines range by relying only on facts, other than a prior conviction, that have been found by a jury or admitted by the defendant. However, I recognize the value of some judicial factfinding — with indeterminate, non-mathematical consequences — for the purpose of creating individually tailored sentences. Therefore, I conclude that our Court, and federal courts

generally, should follow the "offense/offender" distinction offered by Justices Kennedy and Breyer in their separate opinion in *Cunningham v. California*, 549 U.S. 276, 296-97 (2007) (Kennedy, J., dissenting), a solution suggested in a law review article cited in their opinion, Douglas A. Berman & Stephanos Bibas, *Making Sentencing Sensible*, 4 OHIO ST. J. CRIM. L. 37, 55-58 (2006).  In short, offense conduct must be defined by the defendant's admissions and the jury's verdict.  Offender characteristics, on the other hand, may be found by a judge.

By attaching the jury-trial right to *crimes*, rather than to any and all decisions related to *the accused*, the constitutional text suggests a basis for the distinction between offense conduct and offender characteristics.  *See* Douglas A. Berman, *Conceptualizing Blakely*, 17 FED. SENT'G REP. 89, 89 (2004).  The distinction also reinforces "the distinctive institutional competencies of juries and judges, and the distinctive judicial ambit of trial and sentencings."  *Id.*  In their dissent in *Cunningham*, Justices Kennedy and Breyer suggest that, for "factors exhibited by the defendant," a "judicial determination" is appropriate.  But they do not make it clear that the judicial process with regard to offender characteristics or "factors" should be an indeterminate one, in which a particular fact would not trigger a specific, mathematical increase or decrease in the sentence.  In a footnote, the majority in *Cunningham* questions the validity of what it sees as particularized, determinate judicial factfinding on the offender side of the offense/offender divide.  *See* 549 U.S. at 291 n.14.  But determinate, fixed judicial factfinding on offender characteristics is not a necessary part of the concept advanced by Justices Kennedy and Breyer.  The law review article that they acknowledge as the source of their opinion explains that on offender characteristics issues the judge should not find facts by engaging in determinate sentencing but should follow the constitutionally valid, indeterminate sentencing system of the *Williams* era, "when the rehabilitative ideal held sway":

> In other words, whenever offense facts have fixed and predictable sentencing consequences, then the jury, as the preferred fact-finder, must pass on them.  Judges remain authorized, however, to consider a range of facts as part of exercising reasoned judgment at sentencing.

Berman & Bibas, *supra*, at 58 (relying on *Williams v. New York*, 337 U.S. 241, 251 (1949), which states that an indeterminate sentencing system that takes rehabilitation and specific deterrence goals seriously enables judges to exercise "their judgment" without violating the Constitution). The law professors conclude their article as follows:

> The modest vision of constitutional sentencing law set forth would preserve the jury's core function. At the same time, it would leave healthy room for other actors and jurisdictions to experiment and find workable solutions. Reasoned sentencing opinions would over time develop into a common law of sentencing, as diverse judges articulated consensus views about which factors should matter. Reasoned opinions would be more transparent than federal mathematical mumbo-jumbo.

*Id.* at 71.

A rule foreclosing the judicial determination of offense conduct does not necessarily mean that the trial judges in sentencing must forget the evidence they heard at the jury trial. On the offender characteristics side of the divide, sentencing judges may consider all that they have heard when it comes to *Williams*-era-style, indeterminate assessments of defendants' prospects for rehabilitation, risk of future harmful conduct, and other similar considerations. In this case, however, it is clear that the sentencing judge erred in assessing a fixed, determinate, 14-year sentence enhancement based on judge-found offense conduct. The sentence must, therefore, be reversed.

### III.  The Use of Acquitted Conduct

The second sufficient reason to reverse White's sentence is that it relies on acquitted conduct, a subset of judge-found facts that raises a host of unique concerns. *See United States v. Canania*, 532 F.3d 764 (8th Cir. 2008) (Bright, J., concurring) ("[T]he unfairness perpetuated by the use of 'acquitted conduct' at sentencing in federal district courts is uniquely malevolent."). The majority asserts that *United States v. Watts* is controlling. After noting that *Watts* survived *Booker* — a proposition that I do not dispute — the majority implies that we would be overruling the Supreme Court even to treat the question presented here as an open one. But the question to ask is not whether *Watts* is still good law; the question is whether *Watts* addresses this particular question.

After showing why *Watts* cannot be the endpoint of our analysis, I will explain why the use of acquitted conduct at sentencing defies the Constitution, our common law heritage, the Sentencing Reform Act, and common sense.

### A. *Watts*

In *United States v. Booker*, the Court explained that "in *Watts* . . . we held that the double jeopardy clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines." 543 U.S. 220, 240 (2005). The Court then held that *Watts* is irrelevant to the issue of the use of acquitted conduct generally or under the Sixth Amendment because in *Watts* there was no "contention that the sentence enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue . . . simply was not presented." *Id.* The Court then went on to explain:

> *Watts*, in particular, presented a very narrow question regarding the interaction of the Guidelines with the double jeopardy clause, and did not even have the benefit of full briefing or oral argument. It is unsurprising that we failed to consider fully the issues presented to us in these cases.

*Id.* The majority's simple and single-minded reliance on *Watts* as authority for enhancements based on acquitted conduct is obviously a mistake. It is a mistake that other federal circuit courts have also made,[2] but it is a mistake nonetheless. Therefore, we should treat this as an open question and consider whether the use of acquitted conduct to increase criminal sentences is permitted.

---

[2]Numerous courts of appeals assume that *Watts* controls the outcome of both the Fifth *and* Sixth Amendment challenges to the use of acquitted conduct, even after *Booker* explicitly limited *Watts*'s reach to the Fifth Amendment double jeopardy question presented in that case and made it clear that *Watts* does not decide any issue other than double jeopardy. *See*, *e.g.*, *United States v. Magallanez*, 408 F.3d 672, 684-85 (10th Cir. 2005); *United States v. Vaughn*, 430 F.3d 518, 526 (2d Cir. 2005); *United States v. Price*, 418 F.3d 771, 787-88 (7th Cir. 2005); *United States v. Ashworth*, 139 Fed. Appx. 525, 527 (4th Cir. 2005) (per curiam); *United States v. Hayward*, 117 Fed. Appx. 214, 215 (3d Cir. 2006); *United States v. Farias*, 469 F.3d 393, 399 (5th Cir. 2006); *United States v. Gobbi*, 471 F.3d 302, 314 (1st Cir. 2006). Other courts have recognized that *Watts* is not controlling on the Sixth Amendment question, only to be influenced by the other courts, *supra*, who erroneously presume the contrary. *See*, *e.g.*, *United States v. Dorcely*, 454 F.3d 366, 371 (D.C. Cir. 2006); *United States v. Mercado*, 474 F.3d 654, 657 (9th Cir. 2007). Indeed, only one court has recognized that *Watts* has absolutely *no* bearing on a Sixth Amendment challenge and has gone on to address the issue absent any reliance on that case. *See United States v. Duncan*, 400 F.3d 1297, at 1304-05 & n.7 (11th Cir. 2005).

### B.  Acquitted Conduct and Constitutional History

It is hard to overemphasize the importance of trial by jury for our revolutionary ancestors who wrote the Declaration of Independence, framed the Constitution, ratified it in state conventions, and explained it in the *Federalist Papers*.[3]  Suffice it here to mention a few historical facts.  The Declaration of Independence took George III to task for "obstruct[ing] the Administration of Justice" by "depriving us in many cases of the benefit of Trial by Jury," which included punishing colonists after the jury had acquitted them.[4]  The Constitution, Article III, § 2 ("The Trial of all Crimes . . . shall be by jury") and its Sixth Amendment ("In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial, by an impartial jury") demonstrate the importance of restraining judges, legislators, and sentencing commissioners from punishing people for crimes the jury has rejected.

Our case law over the last 200 years has repeatedly emphasized this point.  As the Supreme Court explained in *Apprendi*:

> As a general rule, criminal proceedings were submitted to a jury after being initiated by an indictment containing "all the facts and circumstances which constitute the offence, . . . stated with such certainty and precision, that the defendant . . . may be enabled to determine the species of offence they constitute, in order that he may prepare his defence accordingly . . . and that there may be no doubt as to the judgment which should be given, if the defendant be convicted."  J. ARCHBOLD, PLEADING AND EVIDENCE IN CRIMINAL CASES 44 (15th ed. 1862).  The defendant's ability to predict with certainty the judgment from the face of the felony indictment flowed from the invariable linkage of punishment with crime. *See* 4 BLACKSTONE 369-370 (after verdict, and barring a defect in the indictment, pardon, or benefit of clergy, "the

---

[3]*See, e.g.*, THE FEDERALIST No. 83 (Alexander Hamilton) ("The friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury; or if there is any difference between them it consists in this: the former regard it as a valuable safeguard to liberty; the latter represent it as the very palladium of free government."); *see also Apprendi v. New Jersey*, 530 U.S. 466, 498 (2000) (Scalia, J., concurring) (noting that "the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights").

[4]For an extended treatment of historical background in American trial by jury, *See* THURSTON GREENE, THE LANGUAGE OF THE CONSTITUTION: A SOURCEBOOK AND GUIDE TO THE IDEAS, TERMS, AND VOCABULARY USED BY THE FRAMERS OF THE UNITED STATES CONSTITUTION 860-707 (1991).

court must pronounce that judgment, which the law hath annexed to the crime").

*Apprendi v. New Jersey*, 530 U.S. 466, 478-79 (2000); *see also id.* at 510 (Thomas, J., concurring) (citing a leading treatise on criminal procedure at common law, which stated that "'the indictment must . . . contain an averment of every particular thing which enters into the punishment'") (quoting 1 J. BISHOP, LAW OF CRIMINAL PROCEDURE § 80, at 51 (2d ed. 1872)). In other words, it has long been required that all offense-related facts underlying the sentence first be "stated with . . . certainty and precision" in the indictment and then proved beyond a reasonable doubt to the jury. To permit facts rejected by the jury to serve as the basis for the sentence would sever "the invariable linkage of punishment with crime." Furthermore, we should remember that when Blackstone, quoted above, published his treatise in the 1760s, the English-speaking people had enjoyed the right of trial by jury in criminal cases for more than 500 years, and common law lawyers and judges, from Bracton in 1250 to Lord Coke in 1620 to Blackstone, had come to revere their unique institution of liberty. *See* 2 BRACTON ON THE LAWS AND CUSTOMS OF ENGLAND 386-87 (George E. Woodbine ed., Samuel E. Thorne trans., 1968) (explaining, in the thirteenth century, that a criminal defendant "has the power of choosing whether to place himself on a jury or defend himself by his body").

Perhaps it will be contended that the use of acquitted conduct does not violate the right to trial by jury because, in a literal sense, a defendant is still tried by a jury, even when parts of its verdict is ignored during sentencing. The Founders were keenly aware, though, that "the jury right could be lost not only by gross denial, but by erosion." *Jones v. United States*, 526 U.S. 227, 248 (1999). Indeed, they recognized the need to be particularly circumspect about such incremental degradations, "'which, under a variety of plausible pretenses, may in time, imperceptibly undermine this best preservative of LIBERTY.'" *Id.* at 248-49 (quoting A [New Hampshire] Farmer, No. 3, June 6, 1788, quoted in THE COMPLETE BILL OF RIGHTS 477 (N. Cogan ed.1997)).

Allowing the use of acquitted conduct at sentencing also eviscerates the jury's longstanding power of mitigation, a close relative of the power of jury nullification. As the Supreme Court has noted:

> The potential or inevitable severity of sentences was indirectly checked by juries' assertions of a mitigating power when the circumstances of a prosecution pointed to political abuse of the criminal process or endowed a criminal conviction with particularly sanguinary consequences. This power to thwart Parliament and Crown took the form not only of flat-out acquittals in the face of guilt but of what today we would call verdicts of guilty to lesser included offenses, manifestations of what Blackstone described as "pious perjury" on the jurors' part.

*Id.* at 245 (quoting 4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 238-39 (1769)). The "power to mitigate or nullify the law in an individual case is no accident. It is part of the constitutional design — and has remained part of that design since the Nation's founding." Rachel E. Barkow, *Recharging the Jury: The Criminal Jury's Constitutional Role in an era of Mandatory Sentencing*, 152 U. PENN. L. REV. 33, 36 (2003). A jury cannot mitigate the harshness of a sentence it deems excessive if a sentencing judge may use acquitted conduct to sentence the defendant as though he had been convicted of the more severe offense.

This common law heritage is reflected in the fact that the overwhelming majority of states do not use acquitted conduct at sentencing.[5] Those who have surveyed the state sentencing systems, including Phyllis J. Newton, the previous Staff Director of the U.S. Sentencing Commission, and John Steer, recently retired General Counsel and Vice Chair of the Commission, now concede that states have not followed the Commission in allowing acquitted conduct to mechanically ratchet up sentences and that the federal court's use of acquitted conduct in calculating an advisory sentencing range should be

---

[5]"Although indeterminate sentencing systems typically allow judges to consider prior misconduct when sentencing, many states make an exception for acquitted conduct — conduct that formed the basis of a charge resulting in an acquittal at trial." NORA V. DEMLEITNER, ET AL., SENTENCING LAW AND POLICY 284 (2d ed. 2007). A handful of states permit the consideration of acquitted conduct at sentencing. *See State v. Huey*, 505 A.2d 1242 (Conn. 1986); *State v. Woodlief*, 90 S.E. 137 (N.C. 1916); *State v. Leiter*, 646 N.W.2d 341 (Wis. 2002). But none goes so far as to require judges to do so, much less to mandate an increased presumptive sentencing range because of acquitted conduct.

discontinued.[6]  *See*, *e.g.*, Phyllis J. Newton, *Building Bridges Between the Federal and State Sentencing Commissions*, 8 FED. SENT'G REP. 68, 69 (1995) (arguing that the federal guidelines should be revised by "limiting acquitted conduct to within the guideline range" in light of the fact that "[v]irtually all states, in contrast to the federal system, have adopted an offense of conviction system under which uncharged conduct generally remains outside the parameters of the guidelines"); *An Interview with John Steer*, CHAMPION, Sept. 2008, at 42 ("The first change I would make . . . is to exclude acquitted conduct from the guideline [1.B1.3]" in part because "the federal guidelines [are] alone among sentencing reform efforts in using acquitted conduct to construct the guideline range").  The American Law Institute and American Bar Association have also joined the ranks of those formally opposed to the use of acquitted conduct at sentencing.[7]  Thus the states are still basically following the common law limitations on judicial behavior found in the language of the historical documents discussed above, creating a notable conflict within our federal system.[8]

### C.  The Sentencing Reform Act of 1984

The Sentencing Reform Act of 1984 itself reflects the same type of offense/offender distinction described above and should be read to foreclose the use of acquitted conduct at sentencing.  As to offense conduct, the statute requires that the

---

[6]Even accounting for those few states who permit the use of acquitted conduct at sentencing, *supra* note 5, the federal system is alone in requiring sentencing judges to include acquitted conduct in calculating an advisory sentencing range.  *See* U.S.S.G. § 1B1.3 (2006) (requiring enhancements for all relevant conduct); ALI, Model Penal Code: Sentencing, Tentative Draft No. 1 (approved May 16, 2007), § 6B.06, cmt. e at 227 ("The federal sentencing system is the only system in the United States to *require* sentencing courts to base guidelines sentences upon both conviction and nonconviction offenses.").

[7]*See* ALI, Model Penal Code: Sentencing, Tentative Draft No. 1 (approved May 16, 2007), § 6B.06; ABA Standards for Criminal Justice, Sentencing, § 18-3.6 (3d ed. 1994).

[8]Not only is there a conflict between the federal courts and the state courts over the use of acquitted conduct  at sentencing, there is a wide-open conflict between federal and state courts after *Blakely*, *Booker*, *Rita*, and *Cunningham* concerning the continued use of judge-found facts to allow sentencing judges to ratchet up offense levels.  *See*, *e.g.*, *State v. Gomez*, 239 S.W.3d 733, 735, 738-40 (Tenn. 2007) ("Upon further review following *Cunningham*, we now conclude that the trial court's enhancement of the Defendants' sentences on the basis of judicially determined facts other than the Defendants' prior convictions violated the Defendants' constitutional rights under the Sixth Amendment to the United States Constitution."); *State v. Allen*, 615 S.E.2d 256, 264-65 (N.C. 2005) (interpreting *Blakely* to foreclose judge-found offense conduct facts to increase sentencing level beyond facts corresponding to the jury verdict); *State v. Hughes*, 110 P.3d 192 (Wash. 2005) (same).

defendant be "convicted" of the offense and does not allow the use of acquitted conduct. Congress provided a "convicted" offense sentencing system just as the states have created and just as the common law and the Constitution contemplate. In the Act that created the Sentencing Commission and defined its authority, the Commission "in establishing categories of offenses for use in the Guidelines" may use "the circumstances under which the offense was *committed*." 28 U.S.C. § 3994(c) (emphasis added). Under the Act, the Commission must stick to "convicted" conduct when providing for an "incremental penalty for each offense in a case in which that defendant is *convicted* of (A) multiple offenses committed in the same course of conduct . . . and (B) multiple offenses committed at different times." *Id.* at § 994(L) (emphasis added).[9]

No language of the Act allows what our court has done here "in imposing an incremental penalty for" acquitted or unconvicted offenses. The 1984 Act repeatedly refers to a "defendant who has been *found guilty* of the offense," *e.g.*, 18 U.S.C. § 3551 (emphasis added), which describes the scope of the Act's provisions and 18 U.S.C. § 3552(a), (b), and (c), and §§ 3554, 3555, 3556, 3561, 3571, and 3581. In no provision regarding offense conduct does the statute authorize the use of acquitted or unconvicted conduct. Moreover, when Congress instructed sentencing judges to rectify sentencing disparity, it applied this idea only to "defendants with similar records who have been *found guilty* of similar conduct." 18 U.S.C. § 3553(a)(6) (emphasis added).[10]

---

[9] This argument was cursorily dismissed in *Watts*. *See* 519 U.S. at 154; *id.* at 168-69 (Stevens, J., dissenting). Nevertheless, the Supreme Court itself admitted that *Watts* was neither fully briefed nor argued and, consequently, that the case was not well considered. *Id.* at 171 (Kennedy, J., dissenting). Several years later, the Court went on to limit *Watts*'s reach to the Fifth Amendment double-jeopardy question then before it. *See Booker*, 542 U.S. at 240. For these reasons, the statutory argument based on 28 U.S.C. § 994(L) remains a valid one.

[10] As the supplemental brief of amici curiae law professors who study federal sentencing points out:

> The Supreme Court has instructed that statutory construction "should go in the direction of constitutional policy even though not commanded by it." *United States v. Johnson*, 323 U.S. 273, 276 (1944). As Judge Friendly explained, "the Constitution is itself a datum in the interpretation of a statute." Henry J. Friendly, Benchmarks 210 (167). Accordingly, to the extent that the meaning of "offense" is ambiguous, the appropriate course is to interpret the SRA in a way that furthers the central role of the jury in sentencing as required by *Apprendi*, *Blakely*, and *Booker*.

Brief at 5-6.

On the other hand, on the offender characteristics side of the Guideline calculation, the section of the statute following the section confining offense conduct to "convicted" conduct, instructs the Commission and the courts to consider an open-ended set of aggravating and mitigating offender characteristics including eleven specified "matters," such as "age," "vocational skills," "drug dependence," "livelihood," and "criminal history." 28 U.S.C. § 994(d). These considerations are consistent with an individualized, indeterminate sentencing process that follows upon a Guideline calculation based only on convicted offense conduct. The result of such an individualized sentencing process should produce a sentence that takes into account the "characteristics of the defendant" and "the need . . . to promote respect for the law" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional *treatment*." 18 U.S.C. § 3553(a) (emphasis added). The statute does not allow "retribution" as a consideration and advises the court to err on the side of lenity by imposing a sentence "not greater than necessary" to accomplish the goals of punishment and treatment. *Id*. It seems obvious that a sentencing system that allows a judge to add 14 years based on acquitted conduct to the eight years for convicted conduct is unauthorized and inconsistent with the statute, as well as inconsistent with the Sixth Amendment and our common law heritage.

There remains the overall question under the statute: How does this 14-year sentence enhancement based on acquitted conduct "promote respect for law?" A recently reported incident in the District Court in Washington, D.C., recounted by Judge Bright in his concurring opinion in *United States v. Canania*, 532 F.3d 764 (8th Cir. 2008), answers that question. A jury had acquitted the defendant of several counts of the indictment while convicting him on one count. When it learned that the judge was considering sentencing him for the acquitted conduct, a juror wrote the judge a letter as follows:

> It seems to me a tragedy that one is asked to serve on a jury, serves, but then finds their work may not be given the credit it deserves. We, the jury, all took our charge seriously. We virtually gave up our private lives to devote our time to the cause of justice, and it is a very noble cause as you know, sir. We looked across the table at one another in respect and

in sympathy.  We listened, we thought, we argued, we got mad and left the room, we broke, we rested that charge until tomorrow, we went on. Eventually, through every hour-long tape of a single drug sale, hundreds of pages of transcripts, ballistics evidence, and photos, we delivered to you our verdicts.

What does it say to our contribution as jurors when we see our verdicts, in my personal view, not given their proper weight.  It appears to me that these defendants are being sentenced not on the charges for which they have been found guilty but on the charges for which the District Attorney's office would have liked them to have been found guilty.  Had they shown us hard evidence, that might have been the outcome, but that was not the case.  That is how you instructed your jury in this case to perform and for good reason.

May 16, 2008 Letter from Juror # 6 to The Honorable Richard W. Roberts, *available at* http://video1.washington-times.com/video/docs/letter.pdf (last accessed July 3, 2008).

This juror's reaction is the same, I believe, as the reaction that the drafters of the Declaration of Independence, the Constitution, and the Sentencing Reform Act of 1984 would have upon learning of this 14-year additional sentence for acquitted conduct imposed on the defendant here.