**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0048n.06

**No. 11-4204**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
***Jan 09, 2013***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| HAROLD JONES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  MARTIN and GRIFFIN, Circuit Judges; and BECKWITH, District Judge.[*]

GRIFFIN, Circuit Judge.

This is Harold Jones's second appeal in which he challenges the amount of restitution ordered by the district court.  In a prior opinion, a different panel of this court affirmed Jones's convictions on two counts of mail fraud and one count of health care fraud, but vacated his sentence and remanded for resentencing because the district court's restitution calculation was clearly erroneous. *United States v. Jones*, 641 F.3d 706 (6th Cir. 2011).  On remand, the district court heard uncontradicted testimony from the government's expert witness on the amount of loss resulting from Jones's fraudulent scheme.  The district court adopted the expert's mid-point estimate and ordered Jones to pay $221,157 in restitution.  We affirm.

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

I.

Harold Jones is a podiatrist who was indicted on twenty-seven counts of mail fraud, twenty-three counts of healthcare fraud, and four counts of aggravated identity theft. A jury convicted him of two counts of mail fraud and one count of healthcare fraud. The conduct underlying Jones's convictions involved charging Medicare and Medicaid for services that he did not actually perform. The district court sentenced Jones to one and a half years of imprisonment, three years of supervised release, and ordered him to pay $224,133 in restitution.

In determining both the length of imprisonment and amount of restitution, the district court relied on the relevant conduct underlying Jones's acquitted charges. These charges alleged that when Jones performed routine, non-reimbursable services he intentionally billed Medicare and Medicaid for those procedures using codes for reimbursable services, a criminal practice known as "up-coding." More specifically, the government alleged that when Jones performed non-reimbursable procedures such as corn- and callus-shaving, he billed code 11421, the code for excision of a benign lesion.

The government presented evidence that one hundred percent of Jones's code 11421 bills from 2001 to mid-2005 were fraudulently up-coded, resulting in a estimated loss of $224,133 to Medicare and Medicaid. To establish this amount, the government's statistician, Michael Novak, Ph.D, identified a representative sample of the entire universe of Jones's code 11421 bills during the relevant time frame—that universe consisted of 4,132 separate bills. That sample consisted of 357 bills spread across 264 patient files. The government located only 210 patient files out of the 264

originally identified. After examining the 285 bills contained in those files, the government's

podiatry expert, Dr. John Stephens, testified that Jones had improperly up-coded the bills in each of

them. The government then argued that the statistical extrapolation method established that one

hundred percent of Jones's code 11421 bills were fraudulent, resulting in a total loss of $224,133.

Although the jury acquitted Jones on all charges related to up-coding of those bills, the district court

accepted the government's statistical evidence as proof of the amount of loss under U.S.S.G. §

2B1.1(b)(1) and calculated Jones's sentence and restitution accordingly.

A different panel of this court affirmed Jones's convictions, but vacated his sentence and

remanded for resentencing because the government "presented flawed statistical evidence to prove

what amount of loss Jones had caused through his acquitted conduct." *Jones*, 641 F.3d at 715. To

reach that conclusion, the court reasoned as follows:

> The United States's statistician identified a representative statistical sample
> encompassing 357 bills contained throughout 264 patient files, but the United States
> found only 210 of those files [containing 285 bills]. The United States did not
> present evidence that the 210 patient files still formed a representative sample of bills
> without the missing fifty-four files. Furthermore, it does not appear that the district
> court even realized that the fifty-four files were missing and it definitely did not make
> a finding as to whether they were fraudulent. Therefore, the accuracy of the
> extrapolation method is called into question.
>
> If the United States had presented evidence that the 210 patient files contained a
> representative sample of bills, then the analysis could have reliably established that
> one hundred percent of Jones's claims billing code 11421 were fraudulent. However,
> the United States did not present any such evidence. The only statistically reliable
> sample group was the 357 bills. For the district court to determine the amount of loss
> was $224,133, it would have had to rely upon other evidence in addition to the
> statistical analysis, but it did not as far as we can tell from the sentencing record.

There is no rule that a district court must rely upon statistical analysis in a situation such as this to determine the amount of loss pursuant to section 2B1.1. However, here, the district court relied solely upon a statistical analysis. Without a sound representative sample, that analysis was flawed. As a result, the amount of loss calculation was clearly erroneous.

*Id.* at 712.

On remand, the district court held a resentencing hearing in which the government presented Novak as an expert witness, as well as his report.[1] The district court questioned Novak on whether the 285 bills from the 210 patient files were a representative sample of all disputed code 11421 bills from which it could calculate a total loss amount. Novak answered that, although the government had located only 210 of the 264 patient files, the lesser number remained a statistically reliable sample of the entire universe of bills at issue. He further explained that he sampled with a higher precision rate than is required under the Medicare and Medicaid guidelines. Extrapolating from the bills in the 210 patient files, Novak calculated that Medicare's and Medicaid's combined overpayments "could be as high as $233,000 or as low as $208,000." His mid-point estimate was $221,157.

Jones challenged Novak on whether 210 patient files were a statistically reliable sample from which the district court could extrapolate a total loss amount. He did not proffer a rebuttal expert witness or report. Instead, Jones criticized Novak's methodology on cross-examination. Novak conceded that when he received only 210 patient files out of the 264 requested, he did not generate

---

[1] By this time, Jones had fully served his prison sentence and was serving his term of supervised release. The sole issue at resentencing was the amount of restitution.

a new random sample; failed to analyze whether the missing files were spread out over the years in question or were all contained in a single year; and had no idea whether the missing files contained properly coded bills. Novak also acknowledged that of the bills reviewed, seventy-five were multiple bills from the same patient for the same body part. He further explained, however, that multiple bills from the same patient for the same ailment were still independent of each other because each bill had an equal chance of being selected.

Ultimately, the district court adopted Novak's mid-point estimate and ordered Jones to pay $221,157 in restitution. Jones timely appealed.

## II.

We review the district court's findings of fact at sentencing as to the amount of loss and restitution for clear error and its methodology for calculating loss de novo. *United States v. McCarty*, 628 F.3d 284, 290 (6th Cir. 2010). "[T]he district court is to determine the amount of loss [under U.S.S.G. § 2B1.1(b)(1) ] by a preponderance of the evidence, and the district court's findings are not to be overturned unless they are clearly erroneous." *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006). In calculating the amount of loss, the district court "need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1 cmt. n.3(C).

Jones argues the restitution order must again be vacated and the case remanded because the government failed to prove the amount of loss by a preponderance of the evidence. The government

argues the amount of restitution is proper because the record now contains evidence that alleviates the concern previously identified by this court: "If the United States had presented evidence that the 210 patient files contained a representative sample of bills, then the analysis could have reliably established that one hundred percent of Jones's claims billing code 11421 were fraudulent." *Jones*, 641 F.3d at 712. We agree with the government.

A preponderance of the evidence shows that the 285 bills from the 210 patient files were a representative sample from which the district court could reasonably extrapolate a total loss amount. Novak specifically testified that these bills were a statistically reliable representative sample of the entire universe of Jones's code 11421 bills. Novak also testified that he tends to over sample as compared to Medicare and Medicaid standards. Those standards would require a sample of 67 bills, whereas here, Novak sampled 285 bills. Jones did not present any evidence countering Novak's testimony or calculations and his challenge of Novak's methodology was unpersuasive. Nothing in the record suggests that the missing patient files were anything but a random occurrence. Moreover, given the trial defense that Jones misunderstood billing codes, and that all of the sampled bills were improperly coded, Jones cannot credibly suggest that some of the missing files might have contained bills that were properly coded.[2] Since each of the bills in the representative sample were improper, the district court justifiably extrapolated that all 4,132 of Jones's code 11421 bills were improper.

---

[2]Jones does not dispute Dr. Stephens's expert opinion that each of the 285 sampled code 11421 bills were improperly coded.

Accordingly, we find no reversible error in the district court's amount of loss or restitution calculations.

Jones next argues that even if we accept the district court's methodology, remand is still necessary because the district court should have ordered restitution at the lowest end of Novak's estimate, which was $208,000. Remand for this purpose is unwarranted because the district court "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. n.3(C). Faced with a reliably calculated range of loss, the district court reasonably selected the mid-point estimate. That choice was not clearly erroneous on the record presented.

Jones's final argument is that the use of acquitted conduct at sentencing, specifically the amount of loss resulting from claim up-coding, violated his Fifth Amendment right to due process and his Sixth Amendment right to trial by jury. Our en banc decision in *United States v. White*, 551 F.3d 381 (6th Cir. 2008), controls these constitutional arguments. In *White*, we held that a "district court's consideration of acquitted conduct in sentencing passes constitutional muster [so long as] enhancements based on acquitted conduct do not increase a sentence beyond the maximum penalty provided by the United States Code." *Id.* at 386. Applying *White* in Jones's first appeal, this court explained: "once the district court correctly determines the amount of loss caused by Jones on remand, it may properly order him to pay restitution for both his convicted and acquitted conduct." *Jones*, 641 F.3d at 715. The district court correctly determined the amount of loss and properly considered Jones's acquitted conduct in calculating the amount of restitution. Moreover, the district court amply explained why Jones's acquitted conduct factored into his sentence, and Jones

acknowledges that his case falls within the holding of *White* because consideration of his acquitted conduct did not result in a sentence beyond the statutory maximum penalty.

III.

For these reasons, we affirm the restitution order of the district court.