ALGENON L. MARBLEY, UNITED STATES DISTRICT JUDGE
*1077 "I consider [trial by jury] as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution."
-Thomas Jefferson
I. BACKGROUND
Defendant Robert Scheiblich pleaded guilty in this Court on July 6, 2018, to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). The United States Sentencing Guidelines provide that the base offense level for a violation of 18 U.S.C. § 922(g)(1) is 14, and he was eligible for a downward adjustment of 3 levels for acceptance of responsibility. U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(6) ( U.S. SENTENCING COMM'N 2004) (hereafter U.S.S.G). Thus, Mr. Scheiblich expected that, for his criminal history category of III and an adjusted offense level of 11, his sentence would be in the range of 12 - 18 months.
That expectation was thwarted when the Probation Office released its Presentence Report, which recommended a sentence of 10 years. The Government and the Probation Office reasoned that Mr. Scheiblich should be held accountable not only for the underlying offense, but also for an offense charged in the Franklin County Common Pleas Court for Aggravated Robbery, Robbery, Felonious Assault, and Kidnapping. (State v. Scheiblich , Dkt. No. 18-cr-229). Trial is pending in the state court matter, and Mr. Scheiblich denies the charges. Nevertheless, the Government argues that the firearm cited in the offense of conviction was used in the crime charged in state court It concludes, therefore, that this Court should apply the cross-reference provision at U.S.S.G. § 2K2.1(c)(1)(A) and sentence Mr. Scheiblich for the underlying charge as well as for conduct he neither admits nor has a jury found occurred: the crime of Attempted Murder or Assault With Attempt to Murder.
Mr. Scheiblich raised his objection to the Presentence Report in Court on October 12, 2018. The Court heard oral argument on the Objection on October 19, 2018. (ECF No. 55). For the reasons articulated below, the Court GRANTED Mr. Scheiblich's objection, DECLINED to apply the cross-reference, and SENTENCED Mr. Scheiblich to 30 months incarceration and three years of supervised release.
A. Factual Background
Robert Scheiblich has admitted, pursuant to a plea agreement, that he was a Felon in Possession of a Firearm on or about the dates of December 22, 2017, to December 24, 2017, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). His possession of the Ruger GP100 .357 caliber revolver at issue in the offense was established through DNA evidence found on the firearm.
The Government contends that the firearm was also used during the commission of another crime: the attempted murder of Jesse James. The following allegations are contained in the Presentence Report: On December 23, 2017, law enforcement responded to 911 calls reporting gunshots in Galloway, Ohio. Police arrived to find an individual named Jesse James bleeding, but still alive and conscious, on the side of the road. In response to police questioning, Mr. James told law enforcement officers that he had been robbed by Mr. Scheiblich *1078 and his son, Dillon, and had been beaten with a baseball bat at their residence before having been driven to his current location. Mr. James also reported that he had been shot, but medical evidence suggested otherwise-the Government claims he was pistol whipped. (ECF No. 54 at 9). Mr. James was transported to the hospital, but left the hospital three days later against medical advice. On December 27, Mr. James was found dead, wearing only his hospital gown, in an abandoned car several blocks from the hospital. The coroner identified his cause of death as hypothermia.
Mr. Scheiblich faces prosecution for the above allegations in the Franklin County Common Pleas Court. He denies the charges.
B. The Contested Sentencing Calculations
The Government argued that the Court should adopt the recommendation of the Probation Office, which calculated the Guidelines range as follows:
The defendant pled guilty to Being a Felon in Possession of a Firearm. The guideline for a violation of 18 U.S.C § 922(g)(1) is U.S.S.G, § 2K2.1. Pursuant to the cross reference at U.S.S.G. § 2K2.1(c)(1)(A), apply U.S.S.G. § 2X1.1 (Attempt, Solicitation or Conspiracy), if the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission of another offense, if the resulting offense level is greater than that determined under U.S.S.G. § 2K2.1. To determine the base offense level under U.S.S.G. § 2X1.1, the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty is applied. The defendant is accountable for the Attempted Murder or Assault With Intent to Commit Murder of Jesse James; therefore, U.S.S.G. § 2A2.1 is used to determine the offense level because it results in a higher offense level. This conduct represents the acts Scheiblich aided, abetted, counseled, commanded, induced and willfully caused during the offense of conviction, as per U.S.S.G. § 1B1.3(a)(1)(A), and the conduct attributable to him in the jointly undertaken criminal activity, as per U.S.S.G. §§ 1B1.3(a)(1)(B)(i) through (iii). The base offense level is 33, if the object of the offense would have constituted first degree murder, as per U.S.S. G. § 2A2.1(a)(1).
Mr. Scheiblich argues that the cross-reference provision should not be used to enhance his offense level because the facts related to the robbery and assault are not contained in the underlying Plea Agreement and because he is Constitutionally entitled to a full fact-finding process on the disputed charges.
II. LAW AND ANALYSIS
A. The Court is not Constrained by Facts in the Plea Agreement
First, Mr. Scheiblich argues that the relevant facts the Court may take into consideration are only those facts contained in the Plea Agreement. This conclusion is foreclosed by the Supreme Court's holding in United States v. Watts . In Watts , the Court concluded that a sentencing court may even consider acquitted conduct as long as the sentencing court determines the facts are proven by a preponderance of the evidence:
For these reasons, "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." .... The Guidelines state that it is "appropriate" that facts relevant to sentencing be proved by a preponderance of the *1079 evidence, USSG § 6A1.3, comment., and we have held that application of the preponderance standard at sentencing generally satisfies due process.
United States v. Watts , 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (internal citations omitted). In Booker , a majority of the Court concluded that the Sixth Amendment barred any judicial fact-finding pursuant to the Guidelines that would increase a defendant's sentencing range beyond what the Guidelines would mandate based solely on facts admitted to in the plea agreement. See United States v. White , 551 F.3d 381, 384 (6th Cir. 2008) (en banc). Booker , of course, also held that the Guidelines were advisory, so courts were left to determine whether and how to rely on conduct not admitted to by the defendant or found by a jury in an advisory guidelines system. The outcome in the Sixth Circuit was this: "So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." Id. at 385.
Whether actually to apply the cross-reference, however, remains a matter of discretion for the Court. As the en banc Sixth Circuit held in White :
To say that district court judges may enhance a defendant's sentence based on acquitted conduct, however, is not to say that they must do so. First, and most obviously, a factual presentation that fails to persuade a jury beyond a reasonable doubt may well fail to persuade a judge by a preponderance of the evidence. Second, one of the central points of Booker , highlighted by Kimbrough v. United States , 552 U.S. 85, 128 S.Ct. 558, 564, 169 L.Ed.2d 481 (2007), is that a district court judge may disagree with the application of the Guidelines to a particular defendant because the Guidelines range is too high or too low to accomplish the purposes set forth in § 3553(a). If the district court judge concludes that the sentence produced in part by these "relevant conduct" enhancements "fails properly to reflect § 3553(a) considerations," Rita v. United States , 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007), the judge may impose a lower sentence, including, if reasonable, a lower sentence that effectively negates the acquitted-conduct enhancement, Third, a district court that enhances a sentence based on acquitted conduct, in fulfilling its duty to "adequately explain the chosen sentence to ... promote the perception of fair sentencing," Gall v. United States , 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007), should articulate how and why, in its judgment, such conduct appropriately influenced its § 3553(a) analysis with respect to the specific defendant and specific crime at issue.
551 F.3d at 386.
Here, for the reasons articulated below, the Government's factual presentation did not prove by a preponderance of the evidence that Mr. Scheiblich should be held accountable at sentencing for the Attempted Murder or Assault With Intent to Commit Murder of Jesse James. This ends the inquiry: the cross-reference does not apply.
B. The Government Did Not Carry its Burden by a Preponderance of the Evidence
The Government presented its case over the course of several hours, and as the Court probed the evidence, the Government's theory as to the nexus between the alleged kidnapping and assault of Jesse James and the revolver at issue in this *1080 case transformed radically. The Government at first asserted a direct relationship: Mr. Scheiblich pistol-whipped Jesse James with the revolver. In a later theory, the gun took on a more metaphysical role: Mr. Scheiblich may not have used the gun, but he was emboldened to assault Jesse James by the mere existence of the gun. Then, finally, the Government argued that even if this gun was not implicated in the conduct indicted in the state court case, some gun was, and the Court should still apply a cross reference under a different provision of the Guidelines. This quixotic march through potential theories of liability sheds light on the Government's evidence in support of applying a cross reference: where it exists, it is weak.
1. The 2K2.1(c)(1) Cross Reference Does Not Apply
Section 2K2.1(c)(1)(A) of the Guidelines provides that "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense, apply ... § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense ...." U.S.S.G. § 2K2.1(c)(1)(A). Application Note 14(A) to that section notes that the cross-application provision applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense" and that the firearm "be cited in the offense of conviction." U.S.S.G. § 2K2.1 cmt. n. 14(A). The pertinent question, then, is whether the Government proved that the revolver in the offense of conviction was also used during the course of conduct alleged in state court.
The Government argued that the evidence would show that the gun was used in a pistol-whipping of Mr. James, and identified three pieces of inculpatory evidence to that effect: testimonial evidence placed the gun at issue in the offense of conviction at the Scheiblich house immediately before the alleged assault and kidnapping, a 911 call indicating that the caller heard shots fired, and the fact that Mr. Scheiblich was later pulled over with the gun charged in the offense of conviction in his car. The latter two facts do not connect - either directly or indirectly - the gun at issue in the offense to the alleged kidnapping and assault, so the Court affords them no weight in its analysis. As for the testimonial evidence, it was provided by Gary Spradlin, an individual who testified that he was at the Scheiblich house at the time of the alleged assault and kidnapping Mr. Spradlin testified that he saw a .357 caliber revolver in the house before the alleged events took place, and that the gun reappeared in the car when the Scheibliches drove Mr. Spradlin to the pharmacy later that night. But Mr. Spradlin offered no evidence connecting the gun to a pistol-whipping. Even if he had, though, it would not have been especially compelling because, as the Government admitted, none of Mr. James' DNA is on the weapon of the charged offense.[1] The Government spares no detail in describing the severity of the injuries Mr. James allegedly suffered, noting that the coroner found "lacerations of the scalp, traumatic brain injury, and blunt-force injuries to the head trunk and extremities" along with a "significant *1081 amount of blood on his person." (ECF No. 54 at 9). To use a revolver as a blunt force object to inflict the type of grave bodily harm that Mr. James allegedly suffered would, the Court expects, result in some transfer of DNA. It may well be that the Scheibliches inflicted these injuries on Jesse James using a baseball bat, their hands, or some other weapon. Mr. Scheiblich will face a jury of his peers in the Franklin County Common Pleas Court on that question. Meanwhile, it is not the role of this Court to go on a wild goose chase, characterized by conjecture and speculation, to connect the gun at issue in this offense to a putative pistol whipping.
The argument that the mere possession of the gun emboldened Mr. Scheiblich to participate in the conduct alleged in state court is even less tenable: the law simply does not support it The Court presumes that the Government, in advancing this argument, refers to the "fortress theory," a theory which the Sixth Circuit has endorsed as a means of connecting a firearm to another felony offense to support the application of U.S.S.G. § 2K2.1. In United States v. Ennenga , the Sixth Circuit articulated the "fortress theory," noting that a sufficient connection between a gun and other felony conduct is established "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction." United States v. Ennenga , 263 F.3d 499, 503 (6th Cir. 2001) (citing United States v. Henry , 878 F.2d 937, 944 (6th Cir.1989) ; United States v. Covert , 117 F.3d 940, 948-49 (6th Cir.1997) ). As a threshold matter, the fortress theory is not applicable here because it applies only to drug trafficking crimes: that is so because "[t]he application note that enshrined the fortress theory in the Guidelines singles out drug trafficking crimes for special treatment." Untied States v. Seymour , 739 F.3d 923, 930 (6th Cir. 2014). "To allow otherwise 'would render the distinction in the Guidelines commentary between drug trafficking and other felonies meaningless.' " United States v. Shields , 664 F.3d 1040, 1045 (6th Cir, 2011) (quoting United States v. McKenzie , 410 Fed. Appx. 943, 947 (6th Cir. 2011) ). In any event, it bears repeating that the Government still has not produced any "relevant evidence, other than mere proximity, that the gun was actually used or intended to be used" in the course of felonious conduct. Seymour , 739 F.3d at 930 (citing Shields , 664 F.3d at 1046 ). In sum: the Government has not produced sufficient evidence to support application of § 2K2.1(c)(1) on either of its theories.
2. The 2K2.1(B)(6)(b) Cross Reference Does Not Apply
The § 2K2.1(b)(6)(B) enhancement applies to defendants who "[u]sed or possessed any firearm or ammunition in connection with another felony offense" or who "possessed or transferred any firearm ... with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Two factors differentiate the 2K2.1(B)(6)(b) cross reference from the 2K2.1(c)(1) cross reference: 2K2.1(b)(6)(B) does not contain "the additional requirement that the firearm or ammunition be cited in the offense of conviction," U.S.S.G. § 2K2.1 cmt. n. 14(A), but "the threshold question for the court is whether the two unlawful possession offenses ... were 'part of the same course of conduct or common scheme or plan,' " id. at cmt. n. 14(E). In other words, the government must prove that, in addition to the .357 caliber revolver that forms the basis of the charged offense, Mr. Scheiblich used or possessed another firearm as part of the same course of conduct. It has not: there is not an iota of evidence to *1082 suggest that Mr. Scheiblich possessed another gun in addition the one charged in the indictment, let alone one that was used in the same alleged course of conduct.
3. Other Enhancements Requested by the Government
After the Court orally conveyed that it would decline to apply the cross-reference provisions, the Government sought the following additional enhancements to Mr. Scheiblich's base offense level.
a. 3A1.3 enhancement for physical restraints
Section 3A1.3 of the Guidelines provides for a 2-level increase to the offense level "[i]f a victim was physically restrained in the course of the offense." The Government presented evidence that Mr. James had been zip-tied - either by Robert or Dillon Scheiblich - at some point during the December 22, 2017, to December 24, 2017, timeframe during which the offense to which he pled guilty took place. That evidence included the witness testimony of Gary Spradlin, who conveyed that Mr. Scheiblich had zip-tied Mr. James, as well as photographs of a broken zip-tie in Mr. Scheiblich's basement This evidence was unrebutted, and the Court therefore APPLIES a two-level enhancement for the use of physical restraints.
b. 3B1.1(c) enhancement for organizing criminal activity
Section 3B1.1(c) of the Guidelines provides for a 2-level increase to the offense level if "the defendant was an organizer, leader, manager, or supervisor" in criminal activity. The Government argued that Mr. Scheiblich directed his son to engage in criminal activity and was therefore eligible for the enhancement, relying largely on a statement made by Mr. Scheiblich's wife, Penny Scheiblich, during a witness interview to the effect of "nobody tells [Robert] what to do." But this statement is so general, hyperbolic, and non-falsifiable as to constitute, to borrow a phrase from trade law, mere "puffery": the Court cannot rely on such a statement to prove that Mr. Scheiblich did or did not do any particular act Cf. Morris Aviation, LLC v. Diamond Aircraft Indus., Inc. , 536 F. App'x 558, 563 (6th Cir. 2013) (noting that no reasonable consumer would rely on vague, generalized, subjective terms - "puffery" - in making purchasing decisions). Moreover, statements Mr. Scheiblich made during a jail house call to Penny Scheiblich, including a vague reference to Dillon having done "something that he did on his own," reinforce the notion that he did not direct or command his son to take any particular criminal action. There is simply not a preponderance of evidence in the record before the Court that Mr. Scheiblich organized, led, managed, or supervised a criminal act The Court therefore DECLINED to apply the enhancement.
C. Conduct to be Used at Sentencing
Although it is not necessary for the resolution of this case, the Court would be remiss if it did not take the opportunity to note that the use of conduct neither admitted to by the defendant nor found by the jury creates profoundly troubling Constitutional issues.
A criminal defendant has a Sixth Amendment "right to have a jury find the facts behind his punishment." Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). As the Supreme Court has explained, this principle "extends down centuries into common law." Apprendi v. New Jersey , 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (citing United States v. Gaudin , 515 U.S. 506, 510-11, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) ). Indeed, the Framers crafted the Sixth Amendment with the explicit *1083 purpose of "guard[ing] against a spirit of oppression and tyranny on the part of rulers," and "as the great bulwark of [our] civil and political liberties," 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873). The jury right persists as it was originally envisioned: as a hedge against "overreaching by powerful and ambitious prosecutors and judges." AKHIL REED AMAR, THE BILL OF RIGHTS 84 (1998).
The Court famously safeguarded these foundational Sixth Amendment principles in Apprendi when it held that any fact which increases the range of penalties to which a criminal defendant is exposed must be found by a jury beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348. In the years following Apprendi , the Court repeatedly reaffirmed that rule: in Blakely v. Washington , the Court held that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and in Cunningham v. California , the Court held that "[i]f ... the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." 549 U.S. 270, 290, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007).
Imagine, then, if this Court were to have found that the Government carried its burden and connected the revolver at issue in this case to the conduct charged in state court. He may have received, as the Government requested, the statutory maximum for a felon in possession charge of ten years. Now, imagine a scenario where this Court - just as it did in actuality - concluded that the Government had not proven that the cross-reference provisions should apply, but despite that tack of evidence, nevertheless elected to impose a sentence of ten years. Booker still requires that courts of appeals review district court sentencing decisions for reasonableness. United Slates v. Booker , 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). And this Court seriously doubts that if it issued the statutory maximum sentence in the absence of judge-found aggravating facts, a reviewing court would rubberstamp such a draconian sentence as "reasonable." See United States v. Gray , 521 F.3d 514, 542 (6th Cir.2008) ("A sentencing court acts unreasonably if it commits legal error in the process of taking the Guidelines or other factors into account, or if it fails to consider them at all."). Thus, the presence of a judge-found fact has the potential to dramatically increase the maximum punishment for which Mr. Scheiblich was eligible.
As Professor Douglas Berman has written, such a scenario creates a "textbook Apprendi violation." Brief of Professor Douglas A. Berman as Amicus Curiae in Support of Petitioner at 3, Hebert v. United States , 2016 WL 2754084 (U.S.) (No. 15-1190). This is so because "the Sixth Amendment's prohibition on judge-found facts increasing one's potential punishment thus does not depend on what apparatus generates the maximum limit. Whether that maximum comes from a statute, from a sentencing guideline, or from a court of appeals applying substantive reasonableness review, if that upper limit depends on factual findings, then those findings must comport with the Sixth Amendment." Id. In short, a judge-found fact cannot shift the reasonableness window; only a jury can do that. See Alleyne v. United States , 570 U.S. 99, 133 S.Ct. 2151, 2160, 186 L.Ed.2d 314 (2013).
To sentence based on facts not admitted by a defendant or found by a jury is also irreconcilably at odds with the command in 18 U.S.C. § 3553(a)(2)(A) that, in determining the sentence imposed, a court must *1084 consider the need for the sentence "to promote respect for the law, and to provide just punishment for the offense." As this Court observed in Coleman , "[a] layperson would undoubtedly be revolted by the idea that ... a 'person's sentence for crimes of which he has been convicted may be multiplied fourfold by taking into account conduct of which he has been acquitted.' " United States v. Coleman , 370 F.Supp.2d 661, 671 (S.D. Ohio 2005) (Marbley, J.) (citing United States v. Frias , 39 F.3d 391, 393 (2d Cir. 1994) (Oakes, J., concurring); see also Daniel J. Freed, Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers , 101 Yale L.J. 1681, 1714 (1992) ("Most lawyers, as well as ordinary citizens unfamiliar with the daily procedures of criminal law administration, are astonished to learn that a person in this society may be sentenced to prison on the basis of conduct of which a jury has acquitted him, or on the basis of charges that did not result in conviction."). Indeed, the Federal Reporter is rife with examples of such revulsion, expressed both by judges and by defendants themselves. See, e.g., United States v. Settles , 530 F.3d 920, 924 (D.C. Cir. 2008) ("At his sentencing, [the defendant] himself cogently explained the point directly to the court: 'I just feel as though, you know, that that's not right. That I should get punished for something that the jury and my peers, they found me not guilty.' "); see also, e.g., Jones v. United States , --- U.S. ----, 135 S.Ct. 8, 190 L.Ed.2d 279 (2014) (Scalia, J., dissenting from denial of cert) ("It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable-thereby exposing the defendant to the longer sentence-is an element mat must be either admitted by the defendant or found by the jury. It may not be found by a judge .... This has gone on long enough) (emphasis in original); United States v. Bell , 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring with denial of petition for rehearing en banc) ("Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial. If you have a right to have a jury find beyond a reasonable doubt the facts that make you guilty, and if you otherwise would receive, for example, a five-year sentence have a right to have a jury find beyond a reasonable doubt the facts that increase that five-year sentence to, say, a 20-year sentence?"); United States v. Baylor , 97 F.3d 542, 549 (D.C. Cir. 1996) (Wald, J., concurring specially) (noting that the practice represents a "blatant injustice"); United States v. Frias , 39 F.3d 391, 392-94 (2d Cir.1994) (Oakes, J., concurring) ("This is jurisprudence reminiscent of Alice in Wonderland. As the Queen of Hearts might say, 'Acquittal first, sentence afterwards.' "); United States v. Galloway , 976 F.2d 414, 436-44 (8th Cir.1992) (Bright, J., dissenting) ("If the former Soviet Union or a third world country had permitted [the practice of punishing people for conduct that had not been the subject of indictment or trial] human rights observers would condemn"); United States v. Kikumura , 918 F.2d 1084, 1100-01 (3d Cir.1990) ("This [twelve-fold increase in the sentence] is perhaps the most dramatic example imaginable of a sentencing hearing that functions as 'a tail which wags the dog of the substantive offense."); United States v. Cordoba-Hincapie , 825 F.Supp. 485, 487 (E.D.N.Y.1993) ("Can the guarantees of a jury trial to determine the substantive predicates of criminality be shortcircuited by characterizing a critical element of great significance in deciding punishment as one for the judge to determine in fixing sentence- a sentence predetermined under fixed guidelines, not one imposed under a discretionary *1085 regime? ... Congress could not have intended such a bizarre and dangerous result when it adopted guideline sentences") ). The list, of course, goes on. It cannot be said with a straight face that this shameful practice constitutes just punishment or promotes respect for the law.
Finally, a word on the practical consequences of using uncharged conduct in sentencing decisions: in Booker , the Supreme Court observed that "[t]he Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should sutler the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbours,' rather than a lone employee of the State." United States v. Booker , 543 U.S. 220, 238, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (citing Blakely v. Washington , 542 U.S. 296, 313-14, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (citation omitted) ). The real-world consequence of permitting judge-found fact to increase a potential punishment is that prosecutors are vested with a degree of power that would have shocked the Framers. As Judge Torruella put it, "[a]ll too often, prosecutors charge individuals with relatively minor crimes, carrying correspondingly short sentences, but then use [the Guidelines] to argue for significantly enhanced terms of imprisonment under the guise of 'relevant conduct' - other crimes that have not been charged (or, if charged, have led to an acquittal) and have not been proven beyond a reasonable doubt." United States v. St. Hill , 768 F.3d 33, 39 (1st Cir. 2014) (Torruella, J., concurring). That is precisely what happened here: Mr. Scheiblich was confronted with a decision whether to plead guilty or to exercise his Sixth Amendment right to a jury trial for his Felon in Possession charge. He negotiated with the Government and attained, so he thought, concomitant assurance that he would be sentenced reasonably for the charge. Presumably taking into consideration a potential range of 12 to 18 months under the Guidelines, he accepted the agreement. He was then blindsided by an aberrant Guideline result that he be imprisoned for a period ten times longer than he expected, based on conduct not charged in this court-conduct for which he is presumed, and stands until proven otherwise beyond a reasonable doubt, innocent. See Coffin v. United States , 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895) (articulating the presumption of innocence).
It is time to call this practice what it is: unconstitutional.
III. CONCLUSION
The Court DECLINES to apply the cross reference provisions under 2K2.1(c)(1) and 2K2.1(B)(6)(b). The base offense level for a violation of 18 U.S.C. § 922(g)(1) is 14. It is subject to a 2 level increase pursuant to 2K2.1(b)(4) because the firearm was stolen, a 2 level increase pursuant to 3A1.3 because Mr. James was put in restraints during the course of the offense, and 3 level reduction pursuant to 3E1.1(a) for acceptance of responsibility. For the resulting offense level of 15 and a criminal history category of III, the Guidelines range is 24 to 30 months. Based on the factors listed in 18 U.S.C. § 3553(a), the Court sentenced Mr. Scheiblich to 30 months incarceration and three years of supervised release.
IT IS SO ORDERED.

Actually, the Government argued that testing neither proved nor excluded the presence of Jesse James' DNA on the gun. But when it comes to DNA testing, absence of evidence actually is evidence of absence. See Tanner v, Yukins , 776 F.3d 434 (6th Cir. 2015) (exonerating a defendant on insufficiency of the evidence in part because DNA evidence did not place the defendant at the scene of the crime).