NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0507n.06

Case No. 22-3649

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
|  | ) | OHIO |
| KEVIN R. LIDGE, | ) | OPINION |
|  | ) | |
| Defendant-Appellant, | ) | |
|  | ) | |

**FILED**
Dec 06, 2023
KELLY L. STEPHENS, Clerk

Before: WHITE, THAPAR, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Kevin Lidge pled guilty to drug trafficking and firearm offenses. He received a within-Guidelines sentence of 155 months of incarceration followed by 60 months of supervised release. Lidge now challenges his sentence, claiming the district court improperly considered drugs from his roommate's bedroom in its calculation even though Lidge did not plead guilty to possessing them. Lidge also claims that his trial counsel was ineffective. We affirm the district court's sentence and decline to consider the ineffectiveness claims.

## BACKGROUND

In September 2020, police officers in Akron, Ohio received a tip that Kevin Lidge and Gary Jones were selling fentanyl from multiple residences in the area. Officers confirmed the tip by speaking with a confidential informant and organizing controlled drug purchases from a house at 1320 Tioga Avenue. Based on this information, officers executed a search warrant at that

residence. Kevin Lidge, Deshane Stafford, and another individual were inside along with drugs, dealer paraphernalia, and weapons.

Because Lidge's argument hinges on the location of the contraband, we detail the results of the search. In Lidge's bedroom, police recovered 25.75 grams of fentanyl, a loaded 5.56 x 45mm pistol, $991 in cash, a digital scale, 9mm ammunition, and Lidge's keys to the house. In Stafford's bedroom, officers located 45.14 grams of fentanyl, 1.06 grams of oxycodone, 81.84 grams of cocaine, 12.5 grams of marijuana, a 9mm pistol, an extended pistol magazine, and ammunition of various calibers. From the living room, officers recovered a loaded .45 caliber pistol, 50 rounds of ammunition, and a digital scale. And in the kitchen, officers found 7.07 grams of fentanyl, three digital scales, and a grinder with drug residue. Additionally, the police identified utility bills for the house with Lidge's name on them in the living room.

Based on that evidence, Lidge, Stafford, and Jones were indicted for drug and firearm offenses in the United States District Court for the Northern District of Ohio. Lidge was charged with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and being a felon in possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). Represented by appointed counsel, Lidge pled not guilty to all three counts.

Lidge later hired Adam Van Ho to represent him. After some time, Lidge appeared with Van Ho before the district court for a virtual change of plea hearing. The district court accepted his plea of guilty on all counts. There was no written plea agreement.

At the sentencing hearing, Van Ho informed the court that he had read the presentence report and found it consistent with his previous discussions with Lidge. report held Lidge

responsible for possessing 218.38 kilograms of converted drug weight and used this quantity to compute the base offense level for the first two counts of the conviction. That quantity represents the converted drug weight of all of the drugs in the Tioga Avenue house (except for the marijuana).[1] Including enhancements and adjustments, the corresponding Guidelines sentence on these first two counts was 84–105 months. U.S. SENT'G COMM'N, GUIDELINES MANUAL § 5A (Nov. 2021) (sentencing table).[2] The drugs in the kitchen added 13–16 months to his Guidelines sentence; the drugs in Stafford's bedroom added another 14–18. *See id*. §§ 2D1.1(c)(8), 5A. Altogether, Lidge's Guidelines imprisonment range was 144–165 months.[3]

After confirming that neither Lidge nor the government objected to the contents of the presentence report, the district court adopted its facts and conclusions. Then, after analyzing the § 3553(a) factors and considering statements from the government, Van Ho, and Lidge, the district court sentenced Lidge to a combined term of 155 months' incarceration followed by 60 months' supervised release, almost exactly in the middle of the Guidelines range.

---

[1] According to the Guidelines Drug Conversion Table, the converted drug weights are 64.375 kilograms for the fentanyl in Lidge's bedroom, 17.675 kilograms for the fentanyl in the kitchen, and 136.32 kilograms for the fentanyl, cocaine, and oxycodone in Stafford's bedroom. *See* U.S. SENT'G COMM'N, GUIDELINES MANUAL § 2D1.1 cmt. 8(D) (Nov. 2021). The weight of the drugs in Lidge's bedroom corresponds to a base offense level of 20. The drugs in the kitchen add two points to that, and the drugs in Stafford's bedroom add two more. *See id*. §§ 2D1.1(c)(8)–(10) (drug quantity table). The report calculated the base offense level for Lidge's first two counts as 24.

[2] The report applied a two-point enhancement for maintaining a premises for the purpose of distributing a controlled substance (the 'drug house' enhancement), and a three-point reduction for acceptance of responsibility, resulting in a total offense level of 23. Lidge had three prior convictions, all of which involved firearms, so his criminal history category was five (V).

[3] Lidge's § 924(c) conviction carried a mandatory sentence of 60 months of imprisonment.

Lidge filed pro se a timely notice of appeal. On October 26, 2022, we sua sponte withdrew Van Ho as Lidge's counsel because he had taken no action in support of the appeal. Lidge is now represented by appointed counsel.

## DISCUSSION

### I. Drug Quantity Determination

Lidge claims it was an error for him to be sentenced as if he was responsible for all of the drugs in the Tioga Avenue house because he only pled guilty to possessing the fentanyl and pistol in his own bedroom. The parties agree that our review of Lidge's sentence is for plain error because he did not object to the asserted miscalculation before the district court. *See*, *e.g.*, *United States v. Stafford*, 258 F.3d 465, 470 (6th Cir. 2001). To reverse on plain error review, we must conclude that the district court not only committed an error, but also that the error was "clear or obvious" and affected the defendant's "substantial rights." *United States v. Kennedy*, 65 F.4th 314, 325 (6th Cir. 2023) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Even if these requirements are met, we also must evaluate whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Puckett*, 556 U.S. at 135).

It was not plain error for the district court to have sentenced Lidge according to the drug quantity determination in the presentence report. To begin, we note that a defendant's base offense level calculation takes into account his "relevant conduct," which the Sentencing Guidelines define as conduct "for which the defendant is to be held accountable," not just conduct for which he is "criminally liable." GUIDELINES MANUAL § 1B1.3 cmt. 1; *see also United States v. Davern*, 970 F.2d 1490, 1494 (6th Cir. 1992) (en banc).[4] The district court can make a relevant conduct finding

---

[4] The distinction is important. The Sixth Amendment requires proof beyond a reasonable doubt that a defendant committed a criminal offense; we interpret that to include conduct that increases the statutory maximum sentence for an offense. *United States v. White*, 551 F.3d 381,

so long as (1) a preponderance of the evidence supports it and (2) the resulting sentence does not exceed the statutory maximum punishment for the offense. *United States v. Martin*, 2022 WL 17078715, at *2 (6th Cir. Nov. 18, 2022) (citing *United States v. White*, 551 F.3d 381, 384–85 (6th Cir. 2008) (en banc)).

The defendant's relevant conduct includes "drug quantities 'with which he was directly involved' or that were 'reasonably foreseeable' to him as part of [jointly undertaken criminal activity.]" *United States v. Gardner*, 32 F.4th 504, 524 (6th Cir. 2022) (quoting *United States v. Young*, 847 F.3d 328, 367 (6th Cir. 2017)); GUIDELINES MANUAL § 1B1.3(a)(1)(B). That is true regardless of whether the government chose to charge the underlying conduct as a conspiracy. GUIDELINES MANUAL § 1B1.3(a)(1)(B). The court may make "a reasonable estimate" of the drug quantity involved "based on physical evidence or testimony." *United States v. Tisdale*, 980 F.3d 1089, 1097 (6th Cir. 2020) (citations omitted). We affirm a district court's estimate when "competent evidence in the record" supports it. *United States v. McReynolds*, 69 F.4th 326, 332 (6th Cir. 2023) (quotations omitted). Such an estimate is not an error, let alone one so "clear or obvious" that it constitutes plain error. *Kennedy*, 65 F.4th at 325.

Lidge claims there is no evidence in the record that suggests he jointly undertook criminal activity with Stafford, and therefore his sentence cannot be based on all the drugs found at Tioga Avenue.[5] We disagree. The information in the presentence report about the search at Tioga Avenue provides the evidence necessary to sustain Lidge's sentence. First, dealer paraphernalia was

---

384–85 (6th Cir. 2008) (en banc). But for conduct that increases the Guidelines sentence, we require proof only by "a preponderance of the evidence." *United States v. McReynolds*, 69 F.4th 326, 332 (6th Cir. 2023) (quoting *United States v. Gardner*, 32 F.4th 504, 524 (6th Cir. 2022)); *see also White*, 551 F.3d at 384–85.

[5] In his reply brief, Lidge clarifies that he only objects to being held accountable for the drugs in Stafford's bedroom. He accepts responsibility for the drugs in the kitchen.

present throughout the shared areas of the home, not just in the respective bedrooms. Lidge and Stafford had equal access to the fentanyl in the kitchen, the pistol and ammunition in the living room, and the scales in both those rooms. These common tools suggest a common operation to sell drugs, especially when Stafford's bedroom contained most of the drugs in the house but nothing to package them with. Second, the utility bills for the house in Lidge's name indicate he chose to undertake some responsibility for the goings-on inside. Tying it all together is the tip that started the investigation: that the Tioga Avenue house was part of the fentanyl distribution network Lidge ran with Gary Jones. Under these circumstances, we cannot say that including the full drug quantity from the house in Lidge's sentence reflects a "clear or obvious" error that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Kennedy*, 65 F.4th at 325.

On appeal, Lidge's story is that he and Stafford were independent dealers, not co-conspirators. Lidge points to facts outside of the record to support that story. He claims that Stafford was his "tenant" and that since Stafford kept the door to his bedroom locked, Lidge could not access the drugs inside. It's true that the Sentencing Guidelines caution against holding "street-level drug dealers" accountable for each other's actions when they might "share a common source of supply, but otherwise operate independently." GUIDELINES MANUAL § 1B1.3, cmt. (4)(C)(vi). And Lidge emphasizes that in other cases where we have found a joint operation, we did so on the basis of stronger evidence than exists here. *See, e.g., Martin*, 2022 WL 17078715, at *3 (defendant's driver's license was located in co-defendant's bedroom along with methamphetamine attributed to defendant at sentencing); *Gardner*, 32 F.4th at 524–25 (wiretap recordings of a retail drug dealer coordinating a cocaine resupply trip to Houston). He also points out that we have reversed where there is *no* evidence in the record to support tying a conspiracy's drugs to a street-level dealer defendant. *See McReynolds*, 69 F.4th at 332–34.

There are two problems with Lidge's story. First, the evidence in the record demonstrates that Stafford and Lidge shared more than an address. They lived together in a house full of fentanyl and cocaine. While each *might* have kept a separate stash, they appear to have shared the scales they used to weigh their drugs and the ammunition for the deadly weapons they used to protect their drugs. These facts imply a common enterprise rather than two autonomous agents. Second, only in his reply brief does Lidge assert Stafford's bedroom was locked and inaccessible. That fact was not before the district court during Lidge's sentencing and is not part of the factual record now. Fed. R. App. P. 10(a). So it cannot be a basis for saying the district court erred.

## II.      Ineffective Assistance of Trial Counsel

Lidge also argues his trial counsel was ineffective in various ways. But direct appeal is not the right time for Lidge to raise these claims. To succeed on a constitutional ineffectiveness claim, a defendant must demonstrate his trial counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In the vast majority of cases, the record on direct appeal is insufficient for us to evaluate either deficient performance or prejudice. For instance, the record at this stage will generally not reveal trial counsel's motivations for undertaking a course of action, nor will it typically show whether trial counsel committed "errors of omission." *Massaro v. United States*, 538 U.S. 500, 505 (2003). Therefore, we will only review an ineffective assistance of counsel claim on direct appeal if the record is "sufficiently developed" for us to adjudicate it. *United States v. Williams*, 612 F.3d 500, 509 (6th Cir. 2010).

Lidge would have us review two of his claims now. First, he believes one of Van Ho's representations to the court during the sentencing hearing is by itself evidence of deficient performance. Specifically, Lidge directs us to this statement in response to the court asking

whether Lidge and Van Ho had read and discussed the presentence report: "Your Honor, I have gone over the presentence investigation report. It's consistent with what I previously discussed with Kevin, and so I find it to be accurate." Sentencing Tr., R. 81, PageID 323:1–4. In his brief on appeal, Lidge alleges that Van Ho "intentionally withheld" the presentence report from him, that he still has not seen it, and that together these facts demonstrate deficient performance. Appellant Br. at 33; *see also* Fed. R. Crim. P. 32(i)(1)(A). Second, Lidge urges us to decide that Van Ho's performance was deficient because he failed to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

We decline to rule on these claims today. The allegations in Lidge's appellate briefs are not part of the factual record of the case. Fed. R. App. P. 10(a). So, to adjudicate Lidge's claim about the presentence report, we only have the two sentences from the sentencing hearing. There is nothing in the record indicating the extent to which Van Ho and Lidge discussed the report before the sentencing hearing. *United States v. Ferguson*, 669 F.3d 756, 762–63 (6th Cir. 2012). Likewise, to decide the failure-to-appeal claim, we "must take into account all the information counsel knew or should have known" about Lidge's prospective appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). The record lacks any information about Van Ho's subjective understanding of the situation, so it is inappropriate to decide this claim now. *See United States v. Gilbert*, 838 F. App'x 181, 184 (6th Cir. 2021).[6]

Lidge alludes to evidence outside the record of "several" additional instances of Van Ho's deficient performance. Appellant Br. at 28. As it stands now, however, the record cannot resolve his ineffectiveness claims, so we do not decide them.

---

[6] Additionally, Lidge acknowledges that his ability to file this appeal "minimized" potential prejudice caused by Van Ho's purported abandonment. Appellant Br. at 37.

## CONCLUSION

We AFFIRM the judgment and sentence of the district court.